THE PEOPLE *ex rel.* Frederick Olander, County Treasurer, Appellee, *vs.* THE PEORIA AND PEKIN UNION RAILWAY COMPANY, Appellant.

*Opinion filed February 20, 1908.*

1. TAXES—*what constitutes a "contingency," within meaning of Road and Bridge act.* The expense necessitated by an order of the Federal government requiring a town to provide protection for the piers of a bridge across a navigable stream and to place lights on the bridge is not an ordinary current expense and is properly treated as a "contingency," within the meaning of section 14 of the Rpad and Bridge act, to the extent the duty rests upon the town.

2. SAME—*whether providing protection for bridge approaches is a contingency depends upon the facts.* If the necessity for providing protection for bridge approaches is occasioned by such high water as occurs occasionally every year, or by ordinary wash from rainfall, or other like causes, the protection must be provided from the ordinary funds raised under section 13 of the Road and Bridge act; but if the necessity results from a change in the course of the stream or some other unexpected occurrence a contingency exists, within the meaning of section 14, authorizing an additional tax.

3. SAME—*additional levy must be limited to amount needed for the contingency.* Section 14 of the Road and Bridge act, even since its amendment in 1903, does not authorize the highway commissioners to levy as an additional road tax an amount greater than will be needed to meet the contingency which has necessitated the levy of the tax.

4. SAME—*tax to meet contingency must be levied upon all property in the town.* The tax which highway commissioners are authorized, under section 14 of the Road and Bridge act, to levy to meet some contingency must be levied upon all the taxable property within the town, notwithstanding there may be within the limits of the town a city having 35,000 or more inhabitants.

5. ROADS AND BRIDGES—*town loses jurisdiction of part of bridge subsequently included in village.* Where, after the construction of a bridge rightfully built by a town across a river, a village is organized which embraces the approaches and a part of the bridge within its territory, it is the duty of the village, and not the town, to keep that part of the bridge and approaches within the village in proper repair, and this duty includes compliance with any requirements of the Federal government affecting that portion.

6. SAME—*town retains control of portion of bridge not included in village.* If a bridge is rightfully constructed by a town, the fact

that a portion of the bridge and its approaches is subsequently included within the limits of a newly organized village does not divest the town of its control of the portion of the bridge without the village, and it remains the duty of the town to keep such portion in repair and to levy taxes for such purpose.

APPEAL, from the County Court of Peoria county; the Hon. W. I. SLEMMONS, Judge, presiding.

At the June term, 1906, the county collector of Peoria county made application to the county court of that county for judgment and order of sale against the lands of the Peoria and Pekin Union Railway Company, appellant, for alleged delinquent road and bridge taxes for the year 1905, levied for the township of Peoria, in that county. The cause was continued from time to time until the June term, 1907, when the objections filed to the application, upon a hearing, were overruled and judgment was entered against the lands of appellant for the sum of $1127.98, together with interest, penalty and costs, and from that judgment appellant has prosecuted this appeal.

The town of Peoria, in which the city of Peoria is located, manages its roads and bridges under the cash system. At the semi-annual meeting of the highway commissioners of the town of Peoria in September, 1905, they determined to levy a road and bridge tax of sixty cents on each $100, and on the same day they made a certificate to the board of town auditors and assessor, stating that in their opinion, in view of the necessity of providing for the protection of the piers of the "upper free bridge" extending across the Illinois river, and for placing lights thereon in accordance with the requirements of the United States government, and providing for the protection of the approaches to the said bridge, a contingency had arisen requiring a level of more than sixty cents on each $100 valuation, and requesting written consent to an additional levy of forty cents on each $100. A majority of the board so constituted con-

sented, in writing, to the additional levy, and thereafter, in pursuance of a levy made by said commissioners, a tax of one hundred cents on each $100 valuation was extended by the county clerk against the property of appellant, a part of which, amounting to sixty cents on each $100, was paid. The additional tax levied appellant refused to pay, and that is the tax here involved.

Upon the hearing it was stipulated that the bridge mentioned in the said certificate of the commissioners of highways to the board of town auditors and assessor, and the piers thereof mentioned, and the approaches thereto, and the place at which the government lights were to be placed, were not within the city of Peoria but were all more than one mile distant from the limits of said city; that said bridge extends across the Illinois river from its bank in Peoria township, in Peoria county, to its bank in Fon du Lac township, in Tazewell county, and that the bridge and the approaches thereto were built, under lawful authority, by Peoria township upon the refusal of the highway commissioners of Fon du Lac township to assist in the building of said bridge; that the approaches to said bridge are in the said towns of Peoria and Fon du Lac and in the town of Richwoods, in Peoria county, and that the part of the said bridge that is within Peoria township and the part of the approach that is within Peoria township and Richwoods township are also within the limits of the village of Averyville, a village organized since the construction of said bridge but more than a year before the levy of said tax.

It was further stipulated that on December 8, 1887, the highway commissioners of Peoria township purchased the land on which the bridge and its approaches are located and that said land is now used as a public highway, and has never been transferred in any way to the village of Averyville nor to any person or corporation, and that it has been kept in repair as a public highway by the highway commissioners of the town of Peoria; that the town of Peoria,

prior to the levy in question, on March 15, 1904, and again on August 9, 1905, was ordered by the war department of the United States government to place protection for the piers of said bridge in the river and to place covered lights on the bridge, according to the plans and specifications furnished by that government, and that the estimate received by said commissioners of the cost of constructing the necessary work to protect the piers was $6155.25; that the tax raised by the highway commissioners at the rate of sixty cents on the $100 valuation of the real, personal and railroad property within the town of Peoria outside of the limits of the city of Peoria for the year 1905 was $1599.42, and that all of the property of appellant located in Peoria township is within the city of Peoria.

It is contended by appellant that the additional road and bridge tax levied for the year 1905 against its said property is illegal and void for reasons which will sufficiently appear from the following opinion.

STEVENS & HORTON, and JOHN M. ELLIOTT, for appellant:

The contingency authorizing an additional levy must be one over which the highway commissioners have jurisdiction, and the money raised by a levy in view of such contingency can be used for no other purpose. Hurd's Stat. 1905, chap. 121, sec. 14; *Railway Co.* v. *People,* 144 Ill. 458; *People* v. *Railway Co.* 213 id. 503; *Railway Co.* v. *People,* 225 id. 519; *Railroad Co.* v. *People,* 226 id. 557.

The additional levy of forty cents against the property of appellant is void, because no part of the same can be applied to the contingency certified to by the highway commissioners and must be paid into the city treasury for city purposes. Hurd's Stat. 1905, chap. 121, sec. 16.

The bridge, the piers thereof and approaches thereto, and the place at which the government lights were required to be placed, being located within the territorial limits of

the village of Averyville are under its exclusive control, and the highway commissioners of the town of Peoria had no legal authority to levy a tax for the purpose of repairing or replacing the same. Hurd's Stat. 1905, chap. 24, par. 62, clauses 1, 2, 3, 7, 28; *Ottawa* v. *Walker*, 21 Ill. 605; *Commissioners* v. *Baumgarten*, 41 id. 254; *People* v. *Supervisors*, 111 id. 527; *People* v. *Railway Co.* 118 id. 520; *County of Cook* v. *Railroad Co.* 119 id. 218; *Butz* v. *Kerr*, 123 id. 659; *Marseilles* v. *Howland*, 124 id. 547; *Snell* v. *Chicago*, 133 id. 413; *Railway Co.* v. *People*, 144 id. 458; *Shields* v. *Ross*, 158 id. 214; *People* v. *Railroad Co.* 172 id. 71; *Farson* v. *Fogg*, 205 id. 326.

Section 16 of the Road and Bridge act, as construed by the trial court, is unconstitutional. If it was intended that the commissioners should levy a road and bridge tax upon property within the city, then the provision that the amount so levied shall be used for city purposes renders the law unconstitutional, because (1) it authorized the commissioners to levy a tax for other than the corporate purposes of said town; and (2) because it authorized a tax to be levied for city purposes by other than the corporate authorities of the city. And especially is this true when applied to an additional levy, as here, for a contingency outside of the city. Const. 1870, art. 9, secs. 9, 10; *Haward* v. *Drainage Co.* 51 Ill. 130; *Cornell* v. *People*, 107 id. 372; *Wetherell* v. *Devine*, 116 id. 631; *Butz* v. *Kerr*, 123 id. 659; *Snell* v. *Chicago*, 133 id. 440; *Morgan* v. *Schusselle*, 228 id. 106; *Wightman* v. *Clark*, 103 U. S. 256; *O'Brien* v. *Wheelock*, 184 id. 450.

W. H. STEAD, Attorney General, and ROBERT SCHOLES, State's Attorney, (CLYDE E. STONE, of counsel,) for appellee:

A town may own property outside its limits. *Cochran* v. *Park Ridge*, 138 Ill. 295; *Cullen* v. *Jacksonville*, 147 id. 113; *Shreve* v. *Cicero*, 129 id. 226; Hurd's Stat. chap. 139, secs. 39, 40.

The commissioners of highways must keep the bridges of the town in repair. Hurd's Stat. chap. 121, secs. 2, 265.

The levy in question is the levy of a tax and not a special assessment for local improvements, and must be extended uniformly on all property within the territorial jurisdiction of the town to tax for road and bridge purposes. Const. art. 9, secs. 9, 10; *Railway Co.* v. *People,* 144 Ill. 458; *People* v. *Wilson,* 3 Ill. App. 373; *O'Kane* v. *Treat,* 25 Ill. 458; *Hunsaker* v. *Wright,* 30 id. 148; *Cooper* v. *Ash,* 76 id. 16; *Hayward* v. *People,* 145 id. 58.

The legislature has power to limit the territorial jurisdiction of the town, but has no power to say that taxes imposed by the corporate authorities of the town shall or may be other than uniform throughout that territorial jurisdiction when the latter is determined. *Butz* v. *Kerr,* 123 Ill. 661; *Railway Co.* v. *People,* 144 id. 468.

In the absence of specific limitation by statute or charter on the territorial jurisdiction of a town for levying a road and bridge tax there is no such limitation, and the "taxable property of the town" is subject to said tax. Hurd's Stat. chap. 121, secs. 13, 14; *Butz* v. *Kerr,* 123 Ill. 661; *Railway Co.* v. *People,* 144 id. 468.

The town of Peoria has jurisdiction of that part of the bridge and the approach in question lying outside of the limits of the village of Averyville, and a contingency arising as to that part of said bridge and approach is properly under the jurisdiction of the commissioners of highways of said town. Hurd's Stat. chap. 121, secs. 2, 265; *Marseilles* v. *Howland,* 124 Ill. 547.

The tax collected in the city of Peoria in this case may be applied to the contingency certified. Hurd's Stat. chap. 24, sec. 194.

The necessity and amount of levy in question is in the discretion of the commissioners of highways and board of town auditors and assessor, subject to the limitation of forty cents on the $100, when the contingency has been

232—35

properly certified according to law. *People* v. *Railway Co.* 213 Ill. 506; *Railroad Co.* v. *People,* 226 id. 562; Hurd's Stat. chap. 121, sec. 14.

The tax levied in this case was a valid tax and the law permitting it is constitutional. Hurd's Stat. chap. 121, secs. 13, 14, 16; chap. 24, sec. 194; *Railway Co.* v. *People,* 144 Ill. 458; *Morgan* v. *Schusselle,* 228 id. 112.

Mr. Justice Scott delivered the opinion of the court:

By section 13 of chapter 121, Hurd's Revised Statutes of 1905, highway commissioners are authorized to levy not to exceed sixty cents on each $100 of taxables for road and bridge purposes. By section 14 of that chapter, if in the opinion of the commissioners a greater levy is needed, in view of some contingency, they may, upon certifying the same to the board of town auditors and the assessor, with the consent of a majority of the body so constituted, given in writing, make an additional levy of any sum not exceeding forty cents on each $100 of the taxable property of the town.

It is contended by appellant that the contingency mentioned in the certificate of the highway commissioners is not such a contingency as is contemplated by section 14, *supra.* A reference to the certificate shows that the additional levy was deemed necessary by the commissioners to meet the expense, first, of providing protection for the piers of the bridge in question and of placing lights on the bridge, in accordance with the requirements of the government of the United States; and second, of providing for the protection of the approaches to the bridge. We have so recently and so frequently had occasion to determine the significance of the word "contingency," as used in section 14, that it is unnecessary to refer to the decisions on that subject.

This is a bridge across a navigable stream. The government of the United States, in 1904 and in 1905, prior to September of that year, required that structures be built in

the river to protect the piers of the bridge and that lights be placed upon the bridge, and this requirement was referred to in the certificate. The expense necessitated thereby was not one of the ordinary current expenses of the town. The requirement imposed a duty which did not fall within the scope of the ordinary obligations of the town. We think that within the meaning of the statute a contingency existed, and was shown by the certificate, in so far as this work required by the Federal government was concerned, to the extent that the burden of doing that work rested upon the town. As to the protection for the approaches of the bridge, which does not seem to have been required by the national government, we think the certificate fails to show the existence of a contingency. It merely states that in view of the necessity for providing for the protection of the approaches a contingency has arisen. The necessity of protecting the approaches of a bridge may or may not result from a contingency. If it is occasioned by such high water in the stream as occurs occasionally every year, or by the ordinary wash from rainfall, or other like cause, the protection must be provided from the funds raised by taxes levied under section 13. If the necessity for the protection resulted from a change in the course of the stream, or from some other unexpected occurrence, a contingency would exist which would warrant the levy of a tax under section 14. As to the protection for the approaches, it cannot be determined from the certificate whether a contingency existed, and the tax levied to provide that protection is therefore illegal.

The bridge connects the right bank of the river in Peoria township, Peoria county, with the left bank of the river in Fon du Lac township, Tazewell county. The real estate upon which it rests was acquired by the highway commissioners of the town of Peoria by purchase and was conveyed to the town by deed. It is agreed that the commissioners acquired this real estate and constructed this bridge by law-

ful authority. After the bridge was constructed and more than one year before the tax was levied the village of Averyville was organized. That village includes all that part of the bridge and all that part of the approach thereto which are located in Peoria township. After the village was organized the commissioners of highways were without power to exercise any control or supervision over that part of the bridge and approach located within the village or over any of the public ways within the village, and were without authority to levy any tax to be expended upon that portion of the bridge and approach or upon any of the highways or streets within the village, except it be considered that taxes levied by them which, upon collection, were payable to the village authorities were levied for the purpose of being used upon the thoroughfares of the village. It was the duty of the village to keep all the streets and highways within its confines, including that portion of the bridge and approach within its boundaries, in a reasonably safe condition for the use of the public. (*Village of Marseilles* v. *Howland,* 124 Ill. 547; *Shields* v. *Ross,* 158 id. 214; *People* v. *Chicago and Alton Railroad Co.* 172 id. 71.) This duty includes the construction of any protection to the piers and the placing of any lights upon the bridge that could properly be required by the government of the United States. The necessity for constructing such protection to the piers and providing such lights within the village of Averyville did not constitute a contingency which warranted the levy of the additional tax by the highway commissioners. Had the village of Averyville not been organized, however, the right and duty of the commissioners to maintain this bridge is not questioned. If they possessed that right as to the entire bridge prior to the organization of the village it would seem that the inclusion of a portion of the bridge within the village would not change the right or obligation of the commissioners so far as that portion of the. bridge remaining without the village is concerned. We are of the

opinion that a contingency existed which warranted the commissioners in levying an additional tax to protect the piers of, and place lights upon, that portion of the bridge without the village of Averyville.

The additional tax levied was forty cents on the $100. The amount of tax extended against all the property in the town by reason of this levy was $44,061.53. The estimated cost of building the protection to the piers was $6155.25. The record does not disclose the cost, or the probable cost, of furnishing and placing the lights or of constructing the protection to the bridge approaches, but it is entirely apparent that the tax extended was several times as great as was necessary to pay all the expenses contemplated by the certificate made by the commissioners for the purpose of showing the existence of a contingency. Appellant contends that in any event the highway commissioners were not authorized to levy any more money than would be sufficient to meet the expenditures necessarily occasioned by the contingency. The city of Peoria, at the time this tax was levied, was a city of more than 35,000 inhabitants. The last proviso of section 16 of chapter 121, *supra,* requires commissioners of highways in towns in which there is a city of 35,000 inhabitants or upwards, to pay to the treasurer of that city all the taxes levied upon and collected from property within the limits of such city, under sections 13 and 14. Of the tax extended by virtue of the additional levy of forty cents, $43,028.73 was extended against property within the city of Peoria and $1032.80 was extended against property without the city of Peoria. The statute contains no provision expressly requiring that any money raised to meet a contingency, if paid to the city treasurer, shall be expended by the city for the purpose of assisting in meeting the contingency, and appellee insists that section 14 should not be construed as preventing the commissioners, in the event of a contingency, levying any sum by virtue of section 14 except such as is sufficient to pay the expenses occasioned by

the contingency. Appellee calls our attention to the fact that in section 14, as it existed prior to July 1, 1903, there was an express prohibition against the use of any funds raised by taxation under that section for any purpose except the purpose specified in the consent, in writing, given by the auditors and the assessor, indicating the particular purpose or purposes to which the additional levy was to be applied. That section was amended in 1903 so as to read as at present. The prohibition just referred to was then omitted, and emphasis is placed upon the fact of that omission and upon the fact that, as the statute now reads, if the contingency exists an additional levy may be made of *"any* sum not exceeding forty cents on the $100," upon proper permission being obtained. The additional levy under the statute as it existed prior to July 1, 1903, might be made to meet some usual or ordinary expense of the town, as grading a particular highway or repairing a particular bridge. The question whether or not the additional levy was to be made depended not at all upon the existence of any emergency. Under the present statute the only money that can be used by the highway commissioners for the current expenses of the town is that levied under section 13. In the absence of a contingency no tax whatever can be levied except that levied by virtue of the section last mentioned and such as may be levied to pay damages under section 15 of chapter 121, *supra.* If, however, a contingency exists then a greater levy may be made. We think it apparent, notwithstanding the omission of the prohibition in question and notwithstanding the language last quoted from the present law, that a construction cannot be placed upon this statute which would permit commissioners to levy a tax under section 14 over and above the amount necessary to meet the contingency. The existence of a contingency warrants the levy of no tax except that necessitated by the emergency.

Appellant further insists that inasmuch as all the tax raised by the levy made under section 14 must be paid to

the city of Peoria if the last proviso to section 16, *supra,* be given literal effect, and inasmuch as the statute does not expressly require that the city contribute anything to the expense necessitated by a contingency arising without the city, the burden of meeting the contingency in question falls upon the property of the town lying outside the city, and that the statute, in effect, establishes two jurisdictions for the purpose of taxation by the highway commissioners,— one within the city of Peoria and the other without the city of Peoria,—and that a tax levied to meet a contingency without the city of Peoria should therefore be levied only upon the property without that city. Section 13 provides for a levy of sixty cents on the $100 upon the "property of the town." Section 13 is based upon the hypothesis that "a greater levy is needed in view of some contingency," in which event an additional levy may be made of any sum not exceeding forty cents "on the $100 of the taxable property of the town." If that whole sum, when needed to meet a contingency, may be levied upon property without the city, it is manifest no limit is fixed for the rate at which such a tax may be extended in towns in which there is located a city with a population of 35,000 or upwards, where the emergency arises outside the city. Forty cents on the $100 in Peoria township produces $44,061.53. To levy this entire sum upon the property without the city would make a tax so burdensome that it is apparent the legislature could not have intended to authorize its imposition. The tax to meet a contingency must be levied upon all the property within the town, without regard to whether or not there is a city of 35,000 population in that town.

It is finally contended by appellant that as the money raised under section 14 cannot be used for general road and bridge purposes, and as that portion thereof which is raised within the city of Peoria, according to the language of the last proviso to section 16, *supra,* must be paid to the city of Peoria, and as the city is not required to expend it in as-

sisting to bear the burden occasioned by the contingency, it must pass into the general fund of the city and be used for ordinary corporate purposes of the city. So construing the statute, the highway commissioners are empowered, it is said, to levy a tax upon property within the city which must be paid into the city treasury for general city purposes, and it is urged that a statute conferring such a power upon the commissioners is in violation of sections 9 and 10 of article 9 of the constitution. We think it unnecessary to decide this question in this case. In *Peoria and Pekin Union Railway Co.* v. *People,* 144 Ill. 458, we determined, in a case involving a tax levied by the highway commissioners under section 13, that the proviso to section 16 above referred to was constitutional so far as the tax there involved was concerned. Section 14, as we have above indicated, authorizes the commissioners to levy a tax to meet a contingency upon all the property within the town, the amount levied to be sufficient only to pay the expenses occasioned by the emergency. Such a statute is valid. The question whether or not the legislature may properly require the money raised for such purpose within the city to be paid, in whole or in part, into the treasury of that city is not presented by this record. Whether the last proviso of section 16, *supra,* can be enforced with reference to a tax levied to meet a contingency arising outside the city we do not now determine. The only portion of the tax levied under section 14, *supra,* which is valid, is such portion thereof as was sufficient, in amount, to supply the necessary protection for the piers of that part of the bridge which is without the village of Averyville and to provide the lights for the same part of the bridge. This tax, in such amount, should have been extended against all the property in the town, including that within the city. When the sum necessary is determined the rate can be ascertained by computation, and when the rate is fixed the amount for which the appellant is liable can be readily ascertained. When the case is re-

docketed in the county court the necessary proof can be taken, and, upon the amount of appellant's liability being fixed in accordance with the law as stated in this opinion, a judgment therefor should be rendered and an order made requiring the county collector to pay over to appellant the balance of the money in his hands which was deposited by appellant as a condition precedent to taking this appeal.

The judgment of the county court will be reversed and the cause remanded to that court for further proceedings consistent with the views herein above expressed.

*Reversed and remanded.*